This is the case of Matos v. Attorney General, and we'll hear from Mr. Menard. Good morning, Your Honors. May it please the Court. My name is William Menard, and I represent the petitioners in this case, Alianne Nunes de Araujo and her daughter. I respectfully reserve two minutes for rebuttal. Granted. Thank you. The lead petitioner in this case, a citizen of Brazil, applied for asylum in the United States because she fears return to the country in which her ex-partner brutally raped her and threatened to rape her daughter over an extended period of time, escaping only after reporting his illegal activity to the police. The immigration judge in this case found petitioner's testimony was credible, that her suffering did constitute persecution, and that Brazilian women unable to leave domestic relationships was a cognizable social group for purposes of asylum. It did serve counsel based on ARCG, and in review, the BIA noted that that had been overruled in effect by matter of AB by the Attorney General. You don't address that in your opening brief, and I'd like you to address at the outset whether the cognizability of the PSG is an issue before us, if it's an argument, and if so, if you've waived any arguments as to that. No, we haven't, Your Honor, and it isn't an issue because the, primarily because the immigration judge found in our favor on that issue. He found that it was a cognizable social group, and then in the interim, when matter of AB was decided, the government was aware of that and chose not to raise that before the BIA. They had four months to raise it and didn't do it, and then the BIA, in issuing its decision, acknowledged matter of AB, but said that it didn't affect their decision in any way. So neither the immigration judge nor the government nor the BIA has raised the issue until the government did in its reply brief right now. And furthermore, matter of AB does not eliminate domestic violence claims. Matter of AB simply overruled ARCG on procedural grounds. But why didn't we take the BIA's, the BIA noted the effect of AB and then went on to say even if this were cognizable and addressing other grounds, why shouldn't we read that as the BIA's sua sponte raising the issue, in which case you may have an obligation to raise it before us on appeal? Your Honor, they simply acknowledged the existence of the case, and the fact is the petitioner, we as the petitioners won on that issue at the trial court and the government had the obligation to raise it as an issue before the BIA and chose not to do so. It hasn't raised it until right now. And, Your Honor, I'd like to point out that while, as I was alluding to earlier, while it did overrule ARCG, it didn't get rid of domestic violence claims. In the four months following AB's issuance last year, their immigration attorneys reported 29 grants of asylum with the immigration offices based on domestic violence and 41 grants of asylum based on domestic violence for her immigration courts. It certainly hasn't gotten rid of domestic violence as a ground. Furthermore, the immigration judge here did an extensive analysis of the social group at issue here. So while he did cite to ARCG, he also cited to matter of MEVG and WGR from the BIA regarding social distinction and particularity and found that the social group met those standards. Well, as is apparent from the 28-J letters that we received and the response that we received just this morning, which we appreciate, it appears that that's an issue that's brewing in the circuits. And perhaps that will be something that you have another opportunity to address. But let's move on from the cognizability of that issue, since I take your position to be that it was not, IJ's decision was not expressly overturned by the BIA and therefore is not really before us. As to another issue where I'm curious whether we have in the decision of the BIA, another ground that is not addressed. I wonder about the question of acquiescence and the extent to which there are statements in the decision of the BIA and the IJ that might be read to indicate that they did reach a ruling as to whether you had established acquiescence. By the government. So first of all, just to quickly go back to your first point, this court actually reviewed a very similar case regarding a particular social group. In a non-presidential decision, Padilla-Maldonado, the attorney general, in which the issue of the social group that was very similar to the one here was granted and then a matter of AB was issued and then this court issued a decision. And this court decided to remand the case back to the immigration judge to make a full decision on whether the social group was sufficiently particular and socially distinct in light of AB. So we ask that at a minimum the case be remanded to the IJ to make that decision. So with respect to acquiescence and the government's role in this case, the immigration judge did a full review of the Department of State report in this case and did a full review of the evidence and there was never an issue as to whether the government was able to control the domestic violence that it acknowledged existed but was systematically underreported and not dealt with in the country. So the immigration judge certainly never found that the government could control the violence. The IJ observed that Matos was not under the belief that the authorities would do nothing to assist and the BIA stated that she had not demonstrated that she was unwilling or unable to avail herself of the protection of Brazil because of past persecution or a well-founded fear of future persecution. Are those findings as to acquiescence? Your Honor, I think those would more go to whether she was a member of the group, the member of the particular social group, which is the issue that we've raised on appeal, which is was she a member of a group that constituted women in domestic relationships who were unable to leave those relationships. So the inability to leave encompasses the issue of whether she believed she could go to the authorities or not. So it touches on acquiescence, but it's really a matter of whether she's a member of this group, which goes back to kind of our main core point in this case, which is that this case truly concerns the paralyzing and systematic fear for victims of severe domestic violence. The immigration, so this court in Indachimaya, the Attorney General, ruled that a persecutor may have more than one central motivation for his or her actions and whether one of those central reasons is more or less important than another is irrelevant. It is impossible in this case to determine that at least one reason why petitioner fears going back isn't the fact that she was a victim of over a year of physical and sexual violence. You say it's impossible, but why is that? The agencies at least seem to think that the record was clear that the reason she feared return was because of retaliation regarding her reporting of the illegal conduct to authorities. So why do you say it's impossible based on that? Here's the reason I say that, Your Honor. The immigration judge in this case explicitly ruled that petitioner suffered past persecution. There's an explicit ruling saying that she did suffer persecution. That persecution was based on the rape and the violence that she went through. That violence occurred prior to her reporting the issue to the police. So the immigration judge here has already ruled that she in fact suffered persecution, which could not have been the result of her reporting the issue to the police. So in fact, under 8 CFR 208.13, when a person establishes past persecution, there is a rebuttable presumption that there is a fear of future persecution on that issue. That's true if you've met the other elements, but you can't conflate the conduct that constituted the persecution with the other questions before us. That has to be linked up with the membership in the Nexus. So let's talk about the membership and Nexus issues in that past period, because as you're pointing out, there's not in the IJ or BIA's decision or recognition of the presumption that would follow from a finding of past persecution. But that does require linking up with membership and the Nexus in that past period. Yes, Your Honor. So we're merely pointing out that there is a rebuttable presumption based on that past persecution. Of course, we do have to prove that she is a member of the group. And I think the evidence overwhelmingly establishes that. There is evidence repeatedly throughout the record that she gave in to his sexual advances, and she didn't even understand that much of what was going on was actually rape, because there was some points at which she gave in and didn't know that that was actually a crime that he was committing. She refused to take medication or treat mental health issues in Brazil, because she felt that if she was under the influence of medication, that she wouldn't be able to do that. Let's sort of second-assume that she's a member of the social class. If the testimony hypothetically was, I'm not afraid at all about what will happen if I go back based on my past persecution. I prefer the economic opportunities here in the United States, hypothetically. We would say, well, that's not going to cut it, right? That doesn't link back, and the presumption has been met. I assume you'd agree with that. Correct. Okay, so isn't what the agency is saying here is there's a similar break in the causal nexus that based on her testimony, she does have a credible fear, but she has a credible fear based on retaliation for the reporting to law enforcement, not based on that past persecution. So why is this different than the hypothetical? Because what the government is trying to say is that, and this is, again, goes back to our core point, which is that the government is trying to say that her act of reporting him to the police on this one issue, because she felt that the rape wouldn't be taken seriously and didn't report him on the other issue. She reported him on this issue just so she could get away.  So the fact that she was completely disassociated from her domestic violence, that is completely illogical. She was a victim of over a year of domestic violence and found any way that she could to get out of that violence. To say, you know, it's been shown over and over again that victims of domestic violence will find some way to get out of there, including by retaliating against their abuser or what have you, and that the abuser views that as a way to get away. She views that betrayal as a betrayal of their relationship, not simply as a retribution for the act of calling the police. So we cannot separate over a year of domestic violence from one incident. It is all one and the same. She did the least she possibly could to get out of this, and we cannot separate those two issues. And I see my time is up. I'll let you go to the extent it's helpful for the court. And even before rebuttal, I'd like to get your take on the issue of nexus, which you have only briefly addressed. Sure. So, Your Honors, if this court did find that she were a member of the particular group, once again, the fact that she is a member of that group and was a member of that group for such an extended period of time, the fact that she said she was afraid of retribution at the hearing doesn't unlink her from the domestic violence and doesn't show that she doesn't fear the domestic violence. And that the fact that she was a victim, a membership in her group, that she was in a domestic relationship, doesn't unlink her from the domestic violence. The fact that she reported it to the police doesn't break that link. She was in this group for a very long time. She fears that if she went back, that she would fall right back into being trapped in a domestic relationship. And you're arguing that as a matter of logic, right? You're arguing that as a matter of inference, not based on the record. Because I think the record is, she fears going back because of the retaliation for the reporting to the law enforcement. And your argument is, yeah, but logically you can't separate that from the past. Well, not exactly, Your Honor. She repeatedly stated that she feared that if she tried to leave him, he would just find her and bring her back. She actually stated that in the record. So in this instance in which she did actually manage to leave the relationship, she had previously stated she feared that if she did that, she would be found and just brought right back in. So there's really no difference between now and earlier times where she felt that she would have been brought back in if she tried to leave the relationship. Do I understand correctly, if she establishes past persecution in that, with membership and the nexus, and the presumption is in play, the burden at that point shifts to the government to disprove that she can't relocate to her safe haven? Yes, Your Honor. And that's exactly, that's a core part of our point here. Which is that she, the judge actually, as mentioned earlier, did find past persecution. The only way to rebut that is to show either a change in country conditions or an ability to internally relocate. The government hasn't presented any evidence in this case. The entire evidence has been presented by the petitioner. And the immigration judge made no finding that she could internally relocate. And the government never raised it as an issue. Is there evidence in the record of her inability to relocate or her concerns about inability to relocate? Yes, Your Honor. The fact that she feared that if she tried to leave, he would find her and bring her back. The fact that he was involved with extensive drug and gun illegal activity. She expressed that she was afraid that he had a network and that he could find her if he tried to leave. He's tried to actually communicate with her after she left and came to this country. He's tried to communicate with her family and other members in the community. It's a small community, about 4,000 people in Brazil. He's tried to find her and see what's going on that way. So he's done what he can. He can't do anything while she's here. But it'll be pretty evident that if she went back, that would that would no longer be the case. And once again, it's the government's burden. The government shifts the burden. They haven't presented any evidence to the contrary. How does this fit into our traditional understanding of of nexus? I mean, typically there is an animus toward the group because of that. The identified characteristic is that is the persecution here really tied to her membership in that group? Is it because of her membership that she's being persecuted or is her membership in the group simply what is or was keeping her there for persecution that was on account of something personal and different? You know, that in terms of his wishes and in a personal relationship. Your Honor, this this the reason that she the petitioner entered into a consensual relationship with her abuser in 2012. And then so was in a domestic relationship for over a year. And then in 2014, the violence began. The violence began because she was in a relationship with him. And in Brazil, there is there there is evidence, extensive evidence shown that in Brazil, domestic violence is widespread, that they that the government has tried to solve problems of domestic violence, but has been unable to do so. And it is clear that the abuser, by virtue of her living in the home with him, he abused her because of the relationship that they had and the the relationship that he had with her daughter. That that became an issue in the case as well, that he started to threaten her daughter because she lived in the home. He wasn't, to petitioner's knowledge, doing this to any other person, any other woman. He was doing this to her because she lived in the home and he felt that he had power over her. And he used that power to to rape her and harm her. So the violence that he committed was directly connected to the relationship status that they had. And that that status or that violence based on that status was widespread in Brazil. In your brief, you mentioned a request for a remand. What do you think you would what what's the purpose for the remand if we were to grant one? The your honors, the remand would be in on one issue. The remand would be for the analysis of this social group based on matter of a B, as this court did earlier. In a previous case, this court remanded the case so that the immigration judge could make a finding in the first instance of whether the social group fit within a B. As your as this court noted in matter of Maldonado, Padilla, Maldonado, the that while a B limited or was somewhat weakened cases based on this, it didn't eliminate them. So the issue would go back to the IJ to look at the facts, look at the country conditions and make a decision on that issue. We'd further ask that the that the facts in this case be that the facts regarding her domestic violence be reevaluated. Again, the petitioner only has to prove that one motivating factor of her persecution was that she was a member of a particular group. So if it while this while the IJ ruled that one reason for her fear was retribution, there was no addressing the fact of her other fear, which is which is the persecution that she'd already suffered. And that that how connected the retribution and the domestic violence were to each other. To put that in terms of our our standard of review, you're you're arguing that substantial evidence in the record doesn't support the finding that was made. And that's the basis. Yes. Yes. Thank you. Thank you. Julie Jolly Jolly. May it please the court. My name is Lance Jolly. I represent the respondent, the attorney general of the United States. A close reading of the board's decision makes it plain that the board found that petitioner's proposed group was not recognizable under intervening case law. Given the board's finding, it was incumbent on petitioners to challenge it in their opening brief. As they failed to do so, they have waived this dispositive issue before the court. The board first noted your your colleague has made the point that the IJ obviously found in their favor. The BIA, while acknowledging E.B., went on to state, even if it were cognizable and then addresses other issues. How can we take from that any firm definitive ruling by the BIA as to as to. I'm guessing. So the in this decision, the board first noted that petitioner's proposed group was similar to the one proposed in RCG. The board then distinguished ARCG on membership grounds. We'll talk about that later. Not only did they distinguish it on membership grounds, it moreover noted that the attorney general after the IJ's decision issued matter of a B in which he opined that ARCG was wrongly decided and that the group considered there and was not cognizable. The only way the attorney general could have found that the ARCG group not cognizable was because it must exist independently of the harm asserted. This is a legal flaw. And so and made that finding. That's merely an observation about a B and the rationale there. The BIA didn't take the next step. That next sentence you might expect to see. Right. And if it did, you would have a much clearer cut argument for us. Right. It simply lacked a conclusion. And when we're not uncertain that the BIA rested on that given conclusion, are we able under Chenery to rest our decision on that? If the court finds that the board made no finding as to a B, Chenery would apply. In any event, substantial evidence supports the agency's finding that the lead petitioner is not a member of her proposed group. There were a billion women unable to leave their relationships. At around the age of 17, the lead petitioner broke up with her future abuser because she wanted to work and not be his girlfriend and he left her alone. In 1995, petitioner married someone else and had two children with their husband. She separated from her husband at some point, likely by 2012, and was able to leave that relationship. She started again a relationship in 2012 and called the police in May of 2015. Counsel, how is it probative of her membership in a group of abused domestic partners who aren't able to leave that relationship that 20 years earlier, when she was dating this person in a non-abusive relationship, she was able to end the dating relationship or that she ended her marital relationship, again, where there's no suggestion that that was an abusive relationship? Why is her leaving those relationships probative in any way of her ability to leave an abusive domestic relationship? When considering the global group of women unable to leave their relationships, I think past relationships and her ability to leave those relationships is material, may not be as strong of an issue. But it does play into the fact that she has been able to shift from relationship to relationship. The immigration judge made much note that she was married and was able to leave the marriage. In many cases... that the psychological abuse and the compulsion to remain and the fear of consequences of leaving the relationship are what keeps someone in that relationship when they may have been able to leave some other non-abusive relationship. Those are issues that express why these kind of cases are very sympathetic. However, the record does not compel a contrary conclusion to what the agency decided. She called the cops on her abuser and he was picked up. And months later, before he returned out of prison, she had the resources. She was able to go to her father and had the resources to relocate. And she chose to come to the United States. The totality of these circumstances simply does not compel the conclusion that she is a member of the group that she proposed. Do you agree there is testimony and evidence in the record that she represented and she was unable to relocate without him finding her? And that she feared that he would find her anywhere she went in the country? She did express that fear. And subjectively, sure, she has that fear. But there is no objective evidence. He may have been dealt in drugs, but we know nothing about what kind of drug cartel he belonged to or the reach he had beyond being acquainted with the people in her rural town. But didn't the IJ find that she testified credibly and her testimony was entitled to full evidentiary weight? At least to the credible part, I have to go back. But even with the credible testimony, it still needs objective evidence. And it's lacking that as far as that part. You had questions earlier about the accurate acquiescence. Acquiescence is a question involved with protection from protection under the Convention Against Torture. And that's been waived in their opening by failing to raise it. There is a corollary in asylum and withholding law of the unable or unwilling to control. Well, the same evidence can support kind of both while the IJ and the board made findings as to acquiescence. It didn't make a name or unwilling finding in this case. But because because her group is not cognizable and substantial evidence supports the finding that she's not a member of her proposed group. And that's why the board should deny the petition for review. Can we talk for a moment about the Nexus issue on account of the PSG? Because you agree that if there is a finding of past persecution with Nexus established membership established, in that case, there's a presumption that comes into play. And the government then has the burden to disprove her ability to relocate and work to change country conditions. Now, here it appears that in acknowledging past persecution in terms of the Nexus, the IJ and BIA are then looking to her fear of going back. For retaliation for things that happened after as she ended that relationship and left the relationship. How does that relate to whether she was persecuted during the course of that relationship on account of her membership in the group? As the court as to the AB issue, Chenery kind of board or the IJ. We're both kind of forward looking as to future persecution. I can't really find or even massage a past persecution on account of that group. Isn't that an error of law since they argued past persecution? They tried to put in evidence of the Nexus and membership as to past persecution. But the IJ and BIA didn't address those issues as to what happened before he was removed from the home. They only did it on a forward looking basis. Because the cognizability and the membership issues are dispositive, the court does not need to reach those. To the extent that it does need to reach the Nexus, a remand would be appropriate in that instance. Unless the court has anything further. A couple of quick points on rebuttal, your honors. First of all, the government argued that there was no objective evidence that's patently false. First of all, testimony alone, the testimony of the petitioner alone is sufficient to support a claim for asylum. But she also submitted test affidavits from people she knew in Brazil. And submitted a statement from her therapist in the United States to substantiate the feelings that she had. So there was certainly evidence, in addition to country condition evidence. So there was both subjective and objective evidence submitted in the case. And the government, the immigration judge, found that she was credible based on that, based on the totality of the evidence. The second thing here... When you say there's substantial evidence, what are you referring to? Well, the government argued that there was no... When this court asked the government, the immigration judge found that she had a fear of leaving the relationship. And the government responded by saying there was no objective evidence of that. Well, the immigration judge listened to the testimony and read the affidavits and found that there was sufficient evidence. The second point, and this is another core issue in this case, is what I don't want is for this court to get bogged down in the name of... Specifically the name of this group. The issue really here is that the petitioner was in a domestic relationship and harmed... And suffered persecution because she was in that relationship. So whether the name of the group is Brazilian women in a domestic relationship or Brazilian women in a domestic relationship who are unable to leave, those are essentially... It's a title given by the attorneys and used by the judge during the course of proceedings. Sorry, I see that my time is up. May I just briefly finish? Those are just titles. What the real issue in this case is that she suffered persecution because of the relationship that she was in. Thank you.